UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

Damelus Ezechiel Petit-Bois,

    Plaintiff,

vs.                                                Case No.  3:06-cv-261-J-32MCR

A to Z Express of NH, Incorporated, a foreign
corporation for profit,

    Defendant.
_____/

## **REPORT AND RECOMMENDATION**[1]

**THIS CAUSE** is before the Court on Defendant, A to Z Express of NH, Inc.'s Motion to Dismiss for Lack of Personal Jurisdiction. (Doc. 3). Plaintiff, Damelus Ezechiel Petit-Bois, filed a response in opposition to this motion. (Doc. 7). On April 3, 2006, the district judge entered an Order referring the Motion to Dismiss to the undersigned for a report and recommendation. (Doc. 6).

## **I. INTRODUCTION**

Plaintiff filed a Complaint in state court alleging breach of contract, bailment, civil theft and conversion. (Doc. 2). Defendant removed the case to this Court and filed a Motion to Dismiss for Lack of Personal Jurisdiction (Doc. 3).

---

[1] Any party may file and serve specific, written objections hereto with TEN (10) DAYS after service of this Report and Recommendation. Failure to do so shall bar the party from a de novo determination by a district judge of an issue covered herein and from attacking factual findings on appeal. See 28 U.S.C. §636(b)(1); Fed.R.Civ.P. 72(a), 6(a) and (e); Local Rules 6.02(a) and 4.20, United States District Court for the Middle District of Florida.

## II. **BACKGROUND FACTS**

Taking the facts in the Complaint as true, the following is a brief factual background for this case.  Plaintiff, while living in New Hampshire, entered into a contract with Defendant, a New Hampshire corporation, for Defendant to move Plaintiff's personal effects from his home in New Hampshire, to a new home in Jacksonville, Florida.  Plaintiff claims he selected Defendant to move his personal belongings based on an advertisement in the Salem, New Hampshire telephone book, which stated that Defendant was able to move long distances and internationally. (Doc. 8, Ex. A).  After Plaintiff contacted Defendant, one of Defendant's managers went to Plaintiff's home to provide an estimate of the cost to move Plaintiff's belongings.  The manager prepared an Estimate/Order for Services, which indicated the total tariff charges would be $1,650.00 and showed that Plaintiff paid a $200 cash deposit and therefore, only owed $1,450.00.  (Doc. 8, Ex. B).  Plaintiff claimed the manager never mentioned that another company would actually be transporting Plaintiff's property.

Two days after entering into the agreement and paying the deposit, a truck with A to Z Express written on both sides arrived at Plaintiff's home to pick up his property. At this time, Defendant's employees required Plaintiff to pay $742.00 of the tariff charges.  The driver of the truck then provided Plaintiff with a Combined Uniform Household Goods Bill of Lading and Freight Bill, which again did not mention another company and instead designated A to Z Express as the carrier in two places.  (Doc. 8, Ex. C).

Two weeks later, some of Plaintiff's property was delivered to his new residence in Jacksonville, Florida, however, numerous items were missing such as a computer

containing Plaintiff's published and unpublished manuscripts, software programs and other valuable information.  In order to receive his property, Plaintiff was required to pay $1,126.00 rather than the $708.00 remaining balance.  Plaintiff paid the $1,126.00 and was required to sign a copy of the original Estimate/Order for Service, which lacked the handwritten notes indicating Plaintiff's deposit and the amount owed.  Plaintiff was also required to sign another document entitled "Estimate/Order for Service," which listed Bekins as the carrier.  (Doc. 8, Ex. D).  According to Plaintiff, this was the first time he ever saw or heard the name Bekins with respect to the moving of his property.  To date, Plaintiff has not recovered all of his property.

According to Defendant, it is a New Hampshire corporation and acted as an "origin and booking" agent for an interstate moving company, Bekins Van Lines. Defendant contends that its role is limited to preparing shipments for interstate movement (i.e. storing the shipper's goods in its New Hampshire warehouse) and providing documentation regarding the move.  The interstate moving company then transfers the property onto its trucks and transports them to locations outside the state of New Hampshire.  As such, Defendant believes it does not have sufficient contact with the state of Florida for personal jurisdiction.

### III.  ANALYSIS

A federal court sitting in diversity may exercise jurisdiction over a nonresident defendant to the same extent as a court of that state.  Molina v. Merritt & Furman Ins. Agency, Inc., 207 F.3d 1351, 1355 (11th Cir. 2000) (citing, Prejean v. Sonatrach, Inc., 652 F.2d 1260 (5th Cir. 1981)).  In Florida, jurisdiction over nonresidents is governed by the long-arm statute, Florida Statute, section 48.193, which "bestows broad jurisdiction

on Florida courts." Execu-Tech Business Systems, Inc. v. New Oji Paper Co. Ltd., 752 So.2d 582, 584 (Fla. 2000). To determine whether long-arm jurisdiction is proper, a court must engage in a two-step inquiry. First, it must examine the complaint to determine if sufficient jurisdictional facts have been pled to bring the action within the ambit of the statute. If so, the court must next determine whether sufficient minimum contacts are demonstrated to satisfy the requirements of federal due process. Id. (citing, Venetian Salami Co. v. Parthenais, 554 So.2d 499, 502 (Fla. 1989)). Resolution of the first step requires statutory analysis of Florida's long-arm statute. The second step of the personal jurisdiction analysis is controlled by United States Supreme Court precedent interpreting the Due Process Clause.

The burden of establishing personal jurisdiction rests on the plaintiff. The Eleventh Circuit has described a plaintiff's burden as follows:

> First, the plaintiff must allege sufficient facts in his complaint to initially support long arm jurisdiction before the burden shifts to the defendant to make a prima facie showing of the inapplicability of the statute. If the defendant sustains this burden, the plaintiff is required to substantiate the jurisdictional allegations in the complaint by affidavits or other competent proof, and not merely reiterate the factual allegations in the complaint.

Polskie Linie Oceaniczne v. Seasafe Transport A/S, 795 F.2d 968 (11th Cir. 1986) (citing Electro Engineering Products Co., Inc. v. Lewis, 352 So.2d 862 (Fla. 1977)). Accordingly, the Court must first determine whether Plaintiff has alleged sufficient contacts with Florida to support the exercise of personal jurisdiction under Florida's long-arm statute.

**A.    Florida's Long-Arm Statute**

In order to survive a motion to dismiss for lack of personal jurisdiction, a plaintiff must make a *prima facie* showing that jurisdiction exists. DeLong Equipment Co. v. Washington Mills Abrasive Co., 840 F.2d 843, 845 (11th Cir.1988). "A *prima facie* case of personal jurisdiction over a nonresident defendant is established if the plaintiff presents enough evidence to withstand a motion for directed verdict." Meier v. Sun Intern. Hotels, Ltd., 288 F.3d 1264, 1269 (11th Cir. 2002) (citing Madara v. Hall, 916 F.2d 1510, 1514 (11th Cir. 1990)).  The district court must accept facts as alleged in the complaint as true, to the extent they are uncontroverted by defendant's affidavits and where there exists contradictions, the court must construe all reasonable inferences in favor of the plaintiff.  Madara, 916 F.2d at 1514.

In this case, Plaintiff alleges specific jurisdiction pursuant to §48.193(1)(b) and (g), which provide:

> (1) Any person, whether or not a citizen or resident of this state, who personally or through an agent does any of the acts enumerated in this subsection thereby submits himself or herself and, if he or she is a natural person, his or her personal representative to the jurisdiction of the courts of this state for any cause of action arising from the doing of any of the following acts:
>
> (b) Committing a tortious act within this state.
>
> (g) Breaching a contract in this state by failing to perform acts required by the contract to be performed in this state.

Section 48.193, Florida Statutes (2005).  The Complaint alleges Defendant committed "tortious acts within the State of Florida by willfully or negligently failing to deliver

Plaintiff's personal property to the Plaintiff at his residence in Duval County, Florida." (Doc. 2, ¶5). Additionally, the Complaint claims that "Defendant entered into a contract which was to be partially performed in the State of Florida, and failed to perform the act of delivering certain items of personal property, which was required by the contract to be performed in the State of Florida." (Doc. 2, ¶4).

Defendant responds that it could not have committed a tortious act or breached a contract in Florida because it was merely the "origin and booking" agent for the interstate carrier, Bekins. (Doc. 3, pp. 5-6). Defendant contends that if it committed any wrongful acts, they must have occurred in New Hampshire as that is the only state in which Defendant had control over Plaintiff's belongings. (Doc. 3, p.6). Plaintiff contends that even if Defendant were acting as an agent for Bekins, it is still liable as a party to the contract because it failed to disclose the identity of the company actually transporting Plaintiff's property. (Doc. 7, pp. 6-8). Accordingly, Plaintiff contends Defendant breached a contract in Florida.

Defendant is correct that ordinarily, one who acts as an agent for a disclosed principal is not liable for any claims arising out of the contract entered into by the agent on behalf of the principal. El Jordan v. Solymar, S. De R.L., 315 F.Supp.2d 1355, 1363-64 (S.D. Fla. 2004) (citing, Chung, Yong Il v. Overseas Navigation Co., Ltd., 774 F.2d 1043, 1056 (11th Cir. 1985)). However, "where one enters into a contract as agent for an undisclosed principal, he may be held individually liable on the contract." Van D. Costas, Inc. v. Rosenberg, 432 So.2d 656, 658 (Fla. 2nd DCA 1983) (citing, Collins v. Aetna Ins. Co., 103 Fla. 848, 138 So. 369 (1931); Hohauser v. Schor, 101 So.2d 169

(Fla. 3rd DCA 1958)).  The Rosenberg court discussed the extent to which an agent must disclose its principal in order to avoid liability:

> In order for an agent to avoid personal liability on a contract negotiated in his principal's behalf, he must disclose not only that he is an agent but also the identity of his principal, regardless of whether the third person might have known that the agent was acting in a representative capacity.  It is not the third person's duty to seek out the identity of the principal; rather, the duty to disclose the identity of the principal is on the agent.  The disclosure of an agency is not complete for the purpose of relieving the agent from personal liability unless it embraces the name of the principal; without that, the party dealing with the agent may understand that he intended to pledge his personal liability and responsibility in support of the contract and for its performance.  Furthermore, the use of a tradename is not necessarily a sufficient disclosure of the identity of the principal and the fact of agency so as to protect the agent against personal liability.

Rosenberg, 432 So.2d at 658 (quoting, 3 Am.Jur.2d Agency §320).  In this case, Plaintiff asserts he was unaware that Bekins would be transporting his property until he received the third Estimate/Order for Service after his property was delivered in Florida. (Doc. 8).  The name of Bekins or the fact that a company other than Defendant would be shipping the goods was not disclosed to Plaintiff at any time prior to performance of the contract.  Defendant does not refute this but instead points to the third Estimate/Order for Service as proof that Bekins was the actual carrier.  As such, the undersigned finds that Plaintiff has presented sufficient facts to find that Defendant may be liable on the contract as it entered into an agreement with Plaintiff without disclosing the fact that another company would be transporting Plaintiff's property, much less the

identity of Bekins.[2]  See El Jordan, 315 F.Supp.2d at 1364 (holding that although defendant claimed to have acted as an agent, it "did not act as agent for a disclosed principal, and therefore, [the defendant] became liable as the principal upon the contract").  Accordingly, the Court is satisfied Plaintiff has plead enough to establish Defendant may be liable under the contract.  Additionally, as the Complaint alleges Defendant "failed to perform the act of delivering certain items of personal property, which was required by the contract to be performed in the State of Florida" (Doc. 2, p.2), the Court believes the Complaint alleges enough jurisdictional facts to bring the breach of contract claim within the ambit of Florida's long-arm statute.[3]  As such, the Court must now turn to the issues surrounding due process.

**B.   Due Process**

As discussed above, the second step of the jurisdictional inquiry requires the Court to determine whether sufficient minimum contacts are demonstrated to satisfy the requirements of federal due process.  Defendant must have certain "minimum contacts" with the forum state such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.  International Shoe Co. v. Washington, 326

---

[2]  The Court is not making any decisions regarding the merits of Plaintiff's claims against Defendant.  Rather, the undersigned simply finds Plaintiff has alleged sufficient facts to establish that Defendant may be liable on the contract for purposes of this Motion to Dismiss.

[3]  Because the Court finds the Florida long-arm statute confers personal jurisdiction over the breach of contract claim, it is not necessary to determine whether there is personal jurisdiction over the tort or negligence claims as all of these claims "arose from the same jurisdiction generating event," namely, Defendant's failure to deliver all of Plaintiff's personal belongings to Florida. Cronin v. Washington Nat. Ins. Co., 980 F.2d 663, 671 (11th Cir. 1993) (holding that district court had jurisdiction over entire diversity action in which Florida's long-arm statute provided personal jurisdiction over contract claim but arguably not over negligence claims, where all claims arose from same jurisdiction generating event).

U.S. 310, 316, 66 S.Ct. 154 (1945).  A defendant's activities involving the forum state must be such that the defendant "should reasonably anticipate being haled into court there."  World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297, 100 S.Ct. 559 (1980).

Plaintiff contends that because Defendant entered into a contract with Plaintiff to move his belongings to Florida, Defendant should have anticipated being haled into court in Florida should a breach occur.  Defendant, on the other hand, asserts it is a New Hampshire corporation, with no license to conduct business in Florida.  Defendant further claims it simply contracted with a New Hampshire resident in New Hampshire and performed all of its obligations under the contract (loading Plaintiff's possessions into its New Hampshire warehouse) in New Hampshire.  Therefore, Defendant argues it did not have sufficient minimum contacts with the state of Florida to be subjected to personal jurisdiction here.

To conduct the due process analysis, the Court must first determine whether Defendant has sufficient "minimum contacts" with the state of Florida.  If so, the Court must then examine whether the exercise of jurisdiction over the Defendant would "offend traditional notions of fair play and substantial justice."

### 1. **Minimum Contacts**

Eleventh Circuit has adopted a three-part test to determine whether minimum contacts exist:

> First, the contacts must be related to the plaintiff's cause of action ... Second, the contacts must involve some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum.  Third, the

>  defendant's contacts with the forum must be such that the
>  defendant should reasonably anticipate being haled into
>  court there.

Posner v. Essex Ins. Co., Ltd., 178 F.3d 1209, 1220 (11th Cir. 1999)(citing, Vermeulen v. Renault, U.S.A., Inc., 985 F.2d 1534, 1546 (11th Cir. 1993)).  The "purposeful availment" requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of "random, fortuitous, or attenuated" contacts.  World-Wide Volkswagen Corp., 444 U.S. at 299, 100 S.Ct. at 568.  The Court believes each of the three tests for minimum contacts is satisfied in this case.  Here, Defendant held itself out as a company able to transport property throughout the country.  Defendant contracted with Plaintiff to move Plaintiff's belongings to his new home in Florida.  Defendant did not inform Plaintiff that it was acting as an agent for a third-party who would actually be transporting the goods.  As such, Defendant may be liable on the contract.  Defendant entered into a contract to ship goods to Florida and therefore, the contract required a substantial amount of performance in the state of Florida.  Additionally, Plaintiff was required to pay the balance owed on the contract in Florida.

Based on these facts, the Court finds Defendant's contact with the state: entering into a contract requiring substantial performance in the state of Florida is related to Plaintiff's cause of action and is not random, fortuitous or attenuated.  Furthermore, by knowingly and intentionally entering into a contract to transport property to Florida, Defendant purposefully availed itself of the privilege of conducting activities in Florida.  Finally, because Defendant knew Plaintiff's property was being sent to Florida and that Plaintiff would be paying the balance of the amount owed to Defendant in Florida,

-10-

Defendant should have anticipated being haled into court in Florida should some part of the contract be breached.

Florida courts have found the minimum contacts requirement satisfied when a non-resident has contracted with a Florida resident and the contract requires substantial performance in Florida.  See Stomar, Inc. v. Lucky Seven Riverboat Co., 821 So.2d 1183, 1185-86 (Fla. 4th DCA 2002)(due process requirements met where, in addition to execution of contract with Florida resident and failure to make payment in Florida, the brokerage agreement required broker to perform substantial services in Florida on behalf of the vessel owner in marketing and negotiating the sale of the vessel); Hartcourt Companies, Inc.  v. Hogue, 817 So.2d 1067, 1071 (Fla. 5th DCA 2002)("where a nonresident defendant enters into a contract through its agent in Florida, for services to be performed in Florida, the defendant purposely avails itself of the privilege of conducting activities in Florida, thus invoking the benefits and protections of its law"); Unger v. Publisher Entry Service, Inc., 513 So.2d 674, 676 (5th DCA 1987)("by entering into a contract through its agent in Florida, for services to be performed in Florida, the defendant purposely availed itself of the privilege of conducting activities within Florida").  While Defendant argues that Plaintiff was a New Hampshire resident at the time the contract was originally entered, Defendant was aware that Plaintiff was moving to the state of Florida.  Accordingly, the undersigned does not find the fact that Plaintiff was not yet a Florida resident at the time the contract was initiated to be sufficient to defeat a finding that Defendant had minimum contacts with Florida.

To support its claim that it should not be subjected to personal jurisdiction in Florida, Defendant cites the case of Stock v. SIACI, 2002 WL 31528503 (N.D. Cal. 2002). In that case, a French moving company contracted with residents of France to move their personal belongings from France to the port of Oakland, California. The court in California determined the moving company had not engaged in an act expressly aimed at California and therefore, the purposeful availment prong was not satisfied. Id. at *6. The Court noted that the contract was created in France between residents of France and only required the moving company to pack Plaintiffs' belongings for the move. Id. The moving company was not involved in the actual move at all. Id. Instead, the moving company simply packed the belongings and boarded them on a ship destined for California. Id. There is no indication in the Stock case that the moving company acted as an agent for the shipper and failed to disclose that fact.

In the instant case, like the moving company in Stock, Defendant did not actually move Plaintiff's property. However, unlike the moving company in Stock, Defendant did not disclose the fact that it was acting as an agent for another company. As such, Defendant may be liable on the contract for any breach which may occur. Therefore, the undersigned does not believe the Stock opinion directs a finding that Defendant did not have sufficient minimum contacts with Florida. Indeed, the Court is confident that Plaintiff has made a *prima facie* showing that Defendant had minimum contacts with Florida sufficient to satisfy the first prong of the due process analysis.

### 2. **Fair Play and Substantial Justice**

Next, the Court must determine whether exercising personal jurisdiction over Defendant would offend notions of fair play and substantial justice. Again, the Eleventh Circuit has established several factors for courts to consider in making this determination: "the burden on [Defendant] of defending the suit in Florida; Florida's interest in adjudicating the suit; [Plaintiff's] interest in obtaining effective relief; the interests of the interstate judicial system in using resources efficiently; and the interests of the states in furthering shared substantive policies." Posner, 178 F.3d at 1221 (citing, Madara, 916 F.2d at 1517).

Defendant has not demonstrated or even argued that it would be unduly burdensome for it to defend this action in Florida. While litigating in a foreign state necessarily involves some burden, "modern methods of transportation and communication reduce this burden significantly." Robinson v. Giarmarco & Bill, P.C., 74 F.3d 253, 259 (11th Cir. 1996) (citing, McGee v. International Life Ins. Co., 355 U.S. 220, 223, 78 S.Ct. 199, 201 (1957)). The State of Florida has an interest in adjudicating this dispute as it involves services provided by an out-of-state entity, some of which were provided in Florida and which caused economic harm to a resident. Plaintiff, a Florida resident, has a great interest in the convenience of litigating in his home state. Finally, the Court cannot conceive of any interest of the interstate judicial system in obtaining the most efficient resolution of controversies, or any interest of the states in furthering shared substantive policies that will be thwarted by this decision. Therefore, the second

prong of the due process test is satisfied; the exercise of personal jurisdiction over Defendant does not offend traditional notions of fair play and substantial justice.

Accordingly, after due consideration, it is

**RECOMMENDED**:

Defendant, A to Z Express of NH, Inc.'s Motion to Dismiss for Lack of Personal Jurisdiction (Doc. 3) be **DENIED**.

**DONE AND ENTERED** in Chambers in Jacksonville, Florida this  27th  day of April, 2006.

*Monte C. Richardson*
MONTE C. RICHARDSON
UNITED STATES MAGISTRATE JUDGE

Copies to:

Timothy J. Corrigan,
  United States District Judge,

Counsel of Record